IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RANDALL DANJANOVICH,<br><br>    Plaintiff,<br><br><br><br><br><br>        vs.<br><br><br>THOMAS ROBBINS, RICHARD BYBEE,<br>CLAIR COX, ROGER COX, DOUGLAS L.<br>LITSTER, QUADE NELSON, RANDY<br>HAMEL, SCOTT ALDER, TEK<br>FOUNDATION, a Utah Corporation, and<br>TEK CORP., a Utah Corporation,<br><br>        Defendants. | MEMORANDUM DECISION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AGAINST THOMAS<br>ROBBINS<br><br><br><br><br>Case No. 2:04-CV-623 TS |

This matter comes before the Court on Plaintiff's Motion for Summary Judgment against

Thomas Robbins.

I.  FACTUAL BACKGROUND

Defendant Robbins has failed to respond to the assertions found in Plaintiff's Motion. Robbins has also admitted a number of matters by failing to respond to Plaintiff's requests for admissions.[1]  By failing to admit or deny them, these matters are conclusively established.[2]  The facts that Robbins has either admitted or failed to respond to are as follows:

Tek Corp. (hereinafter "Corp.") was a Utah corporation that was incorporated in November 1999.  TEK Foundation (hereinafter "TEK") was a Utah corporation incorporated in March 2001.  Tek Corp. and TEK Foundation are related entities and Defendant Robbins was the CEO and president of TEK Foundation.

In 2001, Defendant Alder—a person associated with Tek Corp. and TEK Foundation—informed Plaintiff that TEK Foundation had a new investing mechanism which would generate a return of 100% per month.  Plaintiff was later introduced to Defendants Litster and Clair Cox—TEK Foundation's Director, and Secretary/Treasurer and CFO, respectively. These individuals informed Plaintiff that they were involved in major investing transactions that would generate millions of dollars for investors.

In response to these representations, Plaintiff invested $90,000 in TEK Foundation between January 2002 and February 2002.  Plaintiff was instructed to deposit his investment in the I Trust account at Wells Fargo Bank.  The I Trust account was controlled by TEK and Robbins.

---

[1]*See* Fed.R.Civ.P. 36(a).

[2]*Id*. 36(b).

After the investment, Plaintiff was given "Daily Trading Statements" which represented that TEK Foundation was making great returns on its investments.  None of these statements ever showed a loss.

Defendant Alder later approached Plaintiff and informed him of additional investment opportunities and encouraged Plaintiff to invest more money.  Plaintiff did so and invested an additional $107,000 by April 15, 2002.  This brought Plaintiff's total investment with TEK Foundation to $197,000.

After these investments, Plaintiff received regular notices that his money was not available for repayment, but that positive things were happening.  But beginning in September and October 2003, Plaintiff began to demand repayment.  Plaintiff requested repayment from Defendant Robbins.  Robbins told Plaintiff to be patient and stated that the investments would be paid back.  Plaintiff, however, never received repayment.

By failing to respond to Plaintiff's request for admissions, Defendant Robbins has also admitted these additional facts, pursuant to Fed.R.Civ.P. 36(a): (1) that TEK Foundation and its principals failed to file a registration statement with the SEC in connection with the offer and sale of the Danjanovich Investment; (2) that TEK Foundation and its principals sold the Danjanovich Investment to Danjanovich using facilities of interstate commerce, including e-mail and the internet; (3) that TEK Foundation and its principals falsely represented to Danjanovich that the Danjanovich Investment did not constitute a security and that the transaction was exempt from securities law; (4) that TEK Foundation and its principals failed to disclose the purpose for which the Danjanovich Investment was used; (5) that TEK Foundation and its principals were

not licensed as broker-dealers in Utah at the time they solicited the Danjanovich Investment; (6) that TEK Foundation and its principals willfully, recklessly, and intentionally made false material representations for the purpose of inducing Danjanovich to invest in TEK Foundation; (7) that TEK Foundation executed a promissory note in favor of Danjanovich on February 26, 2002, in which TEK Foundation promised the repayment of $90,000 with 100% interest per month; (8) that TEK Foundation promised the repayment of Danjanovich's additional investment of $107,000; (9) that TEK Foundation's contractual obligation to Danjanovich is $197,000 plus 100% interest per month; (10) that TEK Foundation is the alter ego of TEK's principals; (11) that TEK failed to perform its contractual obligations to Danjanovich and that TEK Foundation and its principals are jointly and severally liable to Danjanovich for such obligation; and (12) that Robbins is jointly and severally liable for damages suffered by Danjanovich because he was an officer and/or director in control of TEK.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed this action on July 6, 2004.  On July 29, 2005, Plaintiff filed this Motion for Summary Judgment against Thomas Robbins.  In that Motion, Plaintiff argues that the undisputed facts establish that he is entitled to summary judgement against Defendant Robbins for: (1) violation of Section 12(1) of the Securities Act of 1933; (2) violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (3) acting as an unregistered broker-dealer under Utah Code Ann. § 61-1-22(1); (4) misrepresentations under Utah Code Ann. § 61-1-22(1); (5) fraud; (6) breach of contract; and (7) punitive damages.  Defendant Thomas Robbins has failed to

respond to this Motion to date.  On September 14, 2005, Plaintiff filed a Request for Ruling on his Motion for Summary Judgment Against Thomas Robbins.

### III.  SUMMARY JUDGMENT

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law.  If it has not, summary judgment is not appropriate, for "[n]o defense to an insufficient showing is required."[6]

---

[3]*See* Fed. R. Civ. P. 56(c).

[4]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[6]*Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970)).

5

IV.  DISCUSSION

A.  SECTION 12(1) OF THE SECURITIES ACT OF 1933

Section 12(1) of the Securities Act of 1933 provides:

Any person who (1) offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b) of this section, to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.[7]

Section 5(c) of the Securities Act makes it unlawful to offer to sell a security for which a registration statement has not been filed.[8]  Section 5(a) of the Securities Act makes it unlawful for persons to use any means or instruments of transportation or communication in interstate commerce or of the mails to sell a security for which a registration statement is not in effect.[9] The elements of a Section 5 claim "are '(1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale.'"[10]

In this case, there was no registration statement in effect when Defendant offered and sold securities to Plaintiff, nor was one later filed.  Additionally, the use of interstate communication was used in relation to these sales—namely the use of emails and the internet.  Therefore,

---

[7]15 U.S.C. § 77l(a)(1).

[8]15 U.S.C. § 77e(a)(2).

[9]15 U.S.C. § 77e(a)(3).

[10]*Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 n.4 (2d Cir. 1998) (quoting *In re Command Credit Corp.*, 1995 WL 279776, *2 (S.E.C. Apr. 19, 1995)).

Defendant has violated Section 5 of the Securities Act and is liable to Plaintiff under Section 12(1) of the Securities Act.  The Court will grant Plaintiff summary judgment on this claim. Additionally, the Court finds that Robbins is a control person under 15 U.S.C. § 77o, and is therefore jointly and severably liable for Plaintiff's damages of $197,000 plus interest and costs and legal fees.

B.  SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

Section 10(b) of the Exchange Act prohibits fraudulent conduct in connection with the offer, purchase, and sale of securities.[11]  In order to establish a violation of this section it must be shown that defendants: (a) used jurisdictional means; (b) engaged in fraudulent schemes, practices, or courses of business, or made materially false or misleading statements; (c) in connection with the offer or sale of securities; and (d) acted with scienter.[12]

In order "to fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'"[13]  The Supreme Court has stated that "the term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud."[14]

---

[11]*See* 15 U.S.C. § 78j(b).

[12]*Steadman v. SEC*, 603 F.2d 1126, 1131–33 (5th Cir. 1979), *aff'd* 450 U.S. 91 (1981).

[13]*Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

[14]*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

Here, jurisdictional means were used, namely emails and the internet.  Materially false or misleading statements were made, including: (1) that the investment was risk free; (2) that the investment would generate a profit of 100% per month; (3) that TEK had access to government-approved trading mechanisms that were not available to the general public; and (4) that the money Plaintiff had already invested was generating large profits.  These statements were made in relation to the sale of a security.  They were made with the intent to deceive, manipulate, or defraud Plaintiff.  Therefore, the Court will grant Plaintiff summary judgment as to this claim.  Additionally, the Court finds that Robbins is a control person under 15 U.S.C. § 78t, and is therefore jointly and severably liable for Plaintiff's damages, namely his investment amount of $197,000.

## C.  ACTING AS AN UNREGISTERED BROKER-DEALER

Utah Code Ann. § 61-1-3(1) states that "[i]t is unlawful for any person to transact business in this state as a broker-dealer or agent unless the person is licensed under this chapter." Utah Code Ann. § 61-1-22 imposes liability on those that do so.  Section 61-1-22(1)(a) states:

> A person who offers or sells a security in violation of Subsection 61-1-3(1) . . . is liable to the person selling the selling the security or buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorney's fees, less the amount of any income received on the security, upon the tender of the security or for damages if he no longer owns the security.

That section also allows for treble damages, along with interest, costs, and attorney's fees upon a showing that the violation was reckless and intentional.[15]

---

[15]Utah Code Ann. § 61-1-22(2).

Defendant was not a licensed broker-dealer in Utah at the time the securities were sold to Plaintiff.  Therefore, the Court will grant Plaintiff summary judgment on this claim.  Additionally, Robbins is jointly and severably liable for Plaintiff's damages on this claim: (1) $197,000 plus 12% interest per annum from the date of investment; (2) costs; and (3) attorney's fees.  The Court will not award treble damages as requested by Plaintiff.

D.  MISREPRESENTATIONS

Utah Code Ann. § 61-1-1(2) states: "It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to: (2) Make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."  Utah Code Ann. § 61-1-22(2) provides for civil liabilities and allows for treble damages, interest, costs, and attorney's fees upon a showing that the violation was reckless and intentional.

Here, Defendant made untrue statements of material fact and/or failed to make statements of material fact in connection with the offer, sale, or purchase of a security.  Therefore, the Court will grant Plaintiff summary judgment on this claim.  Additionally, Robbins is jointly and severably liable for Plaintiff's damages on this claim: (1) $197,000 plus 12% interest per annum from the date of investment; (2) costs; and (3) attorney's fees.  The Court will not award treble damages as requested by Plaintiff.

E.  FRAUD

> [I]n order to prevail on a claim of fraud, all the elements of fraud must be established by clear and convincing evidence.  Those elements are: (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representer either (a) knew to be false, or (b) made recklessly,

knowing that he had insufficient knowledge on which to base such representation; (5) for the purpose or inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[16]

Here, Plaintiff alleges, and Defendant does not dispute, that the representations made to Plaintiff concerned material facts which were false.  The Defendant either knew they were false or made these statements recklessly.  These statements were made to induce Plaintiff to investment his money and that Plaintiff did so after relying on these statements.  Further, Plaintiff was injured by so relying on Defendant's statements.

The Court finds that Plaintiff has presented sufficient evidence to meet the clear and convincing standard required.  Therefore, the Court will grant Plaintiff summary judgment as to this claim.

## F.  BREACH OF CONTRACT

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[17]

The Court finds that there was a contract between the parties.  In accordance with that contract, Plaintiff made a disbursement of $90,000 on February 26, 2002, and a second disbursement of $107,000 on April 15, 2002.  The Court also finds that Defendant has not

---

[16]*Secor v. Knight*, 716 P.2d 790, 794 (Utah 1986) (citations omitted).

[17]*Bair v. Axiom Design, L.L.C.*, 20 P.3d 388, 391 (Utah 2001) (citing *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934)).

attempted to repay any of this money to Plaintiff.  Plaintiff has suffered damages as a result of this breach.

Plaintiff asserts that Defendant promised to pay 100% interest per month.  The Court finds this interest rate unconscionable and will not apply it here.  The Court will substitute a reasonable rate accordance with Utah law.[18]  This rate is set at 10% per annum.[19]  The Court therefore grants Plaintiff's Motion for Summary Judgment on this issue.

## G.  PUNITIVE DAMAGES

Plaintiff's seventh cause of action seeks punitive damages in the amount of $200,000. Plaintiff alleges that Defendant Robbins's conduct manifests a knowing or reckless indifference toward, and disregard of, the rights of Plaintiff.  The Court finds that Plaintiff has failed to prove that he is entitled to punitive damages.  Therefore, this claim is denied.

## V.  CONCLUSION

The Court therefore:

ORDERS that Plaintiff's Motion for Summary Judgment Against Thomas Robbins is GRANTED in part and DENIED in part.

---

[18] *See* Utah Code Ann. 15-1-1(2).

[19] *Id.*

DATED   October 5, 2005.

BY THE COURT:

_____
TED STEWART
United States District Judge